# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CARMEL SAXON,

        **Plaintiff,**

v.                                         Case No: 6:15-cv-1854-Orl-31GJK

SEMINOLE COUNTY PUBLIC
SCHOOLS,

        **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 21) filed by the Defendant, Seminole County Public Schools ("SCPS"), the response in opposition (Doc. 38) filed by the Plaintiff, Carmel Saxon ("Saxon"), and the reply (Doc. 48) filed by SCPS.

    **I.**     **Background**

Saxon worked in the administrative offices of SCPS for more than 10 years. She was hired as a secretary in the Curriculum Services Department in 2000. Two years later, she was promoted to executive secretary, first serving in the Curriculum Services Department and then in the Department of Teaching and Learning, which was created as the result of a merger between the Curriculum Services Department and the Professional Development Department. After the merger, the Department of Teaching and Learning had two executive secretary positions. Throughout her time with SCPS, she was on an annual contract, which was renewed eleven times.

Near the beginning of the 2011-12 school year, Dr. Corbett Wilson (henceforth, "Wilson") became the director of the Department of Teaching and Learning. Saxon contends that shortly

after he became the director of her department, he began making derogatory remarks regarding her age and transferring some of her job responsibilities to younger employees.

Wilson opted not to renew Saxon's annual contract after the 2012-13 school year. Saxon, who was 60 on the date that she was notified that her contract would not be renewed, contends that she was discriminated against due to her age. In the instant suit, she asserts two age discrimination claims: one under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (Count I) and one under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10 (Count II).[1] By way of the instant motion, SCPS seeks summary judgment as to both counts.

**II.    Standard**

   A.   Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

---

[1] Originally, Saxon also asserted retaliation claims under the ADEA and the FCRA. Those claims have been settled. (Doc. 47).

- 2 -

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

B.  Age Discrimination

Age discrimination claims brought under the Florida Civil Rights Act are considered within the same framework used to decide actions brought pursuant to the ADEA. *Zaben v. Air Prods. & Chems., Inc.,* 129 F.3d 1453, 1455 n. 2 (11th Cir. 1997). To establish a *prima facie* case of age discrimination under either the FCRA or the ADEA, a plaintiff must show that she "(1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, … and (4) was replaced by a younger individual." *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997). Where the plaintiff's position was eliminated, the test is slightly different. In that situation, the plaintiff must show that "(1) [s]he was in a protected age

group; (2) [s]he was adversely affected by an employment decision; (3) [s]he was qualified for [her] current position or to assume another position at the time of discharge, and (4) the evidence could lead a factfinder reasonably to conclude that the employer intended to discriminate on the basis of age." *Mitchell v. City of LaFayette*, 504 Fed. Appx. 867, 870 (11th Cir. 2013). The variant test alters the fourth prong of the *McDonnell Douglas* test, that a person outside the protected class replaced the plaintiff, because, when a reduction in force occurs, employers rarely seek replacements for the discharged employee. *Id.* (citing *Mauter v. Hardy Corp.,* 825 F.2d 1554, 1557 (11th Cir.1987)).

Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to rebut the presumption of age discrimination by presenting evidence that the adverse employment action was based on a legitimate, nondiscriminatory reason. *See Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1312 (11th Cir. 2016).

### III.    Analysis

At least for purposes of this motion, SCPS does not dispute the first and third elements of an age discrimination claim – *i.e.*, that she was a member of the protected age group or that she was qualified to do her job. However, SCPS argues that Saxon has failed to establish the second element of a *prima facie* case of age discrimination because the failure to renew her annual contract cannot constitute adverse employment action. (Doc. 21 at 9-10). To constitute an "adverse employment action," the challenged decision must result in a serious and material change in the terms, conditions, or privileges of employment. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (defining "adverse employment action" for purposes of Title VII). The employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person under the circumstances. *Id.*

In support of this argument, SCPS cites two cases: *Fong v. School Board of Palm Beach County*, 2012 WL 12855564, \*3 (S.D. Fla. 2012) and *Sherrod v. School Board of St. Lucie County*, 2014 WL 11456547. In *Fong*, the court found that the failure to renew the plaintiff's contract did not constitute adverse employment action. *Fong* at \*3. In *Sherrod*, the court was "doubtful" that the plaintiff had suffered an adverse employment action when the defendant did not offer him a new annual employment contract. *Sherrod* at \*7. However, neither of these courts held that failure to renew an annual contract could never constitute adverse employment action. And numerous decisions have reached the opposite conclusion. *See, e.g., Hernandez-Mejias v. General Elec.*, 428 F.Supp.2d 4, 8 (D. P.R. 2005) (surveying cases and "agree[ing] with the overwhelming majority of courts" that non-renewal of an employment contract constitutes an adverse employment action). Therefore, this argument fails.

Next, SCPS argues that Saxon has not established a *prima facie* case because she has not provided evidence that would allow a factfinder to conclude that her employer intended to discriminate against her based on her age. (Doc. 21 at 10). However, as SCPS itself recognizes, Saxon has testified *inter alia* that prior to deciding not to renew her contract, Wilson among other things: called her "old and frustrated"; declined to include her in a staff meeting because she was "planning to retire"; replaced some of her job responsibilities with more menial tasks while reassigning those responsibilities to younger employees; forced her to swap cubicles with a younger employee, resulting in Saxon moving from just outside his door to four or five cubicles away; and referred to her as "the mother of the second floor." (Doc. 21 at 10-11; Doc. 38 at 3-6). In addition, although Saxon was purportedly let go because the Department of Teaching and Learning was overstaffed, the department had hired another, younger secretary only months earlier, and the younger secretary took over some of Saxon's duties prior to Saxon's termination.

- 5 -

(Doc. 38 at 10). Though Wilson and SCPS argue that most of these events did not occur (or dispute Saxon's characterization of events that did occur), the Court finds that a factfinder who believed Saxon's testimony and this other evidence could reasonably conclude that age was the motivation for Wilson's decision not to renew Saxon's annual contract.[2]

Finally, SCPS argues that, even assuming *arguendo* that Saxon has established a *prima facie* case, Wilson had a legitimate, non-discriminatory reason for declining to renew Saxon's contract. Specifically, Wilson testified that he needed to eliminate one of the two executive secretary decisions in his department and that, while Saxon was on an annual contract, the other executive secretary – Julia Simpson ("Simpson") – was a regular employee, with rights to her job protected by the Collective Bargaining Agreement. (Doc. 21 at 12-13). Because Saxon had "less rights to her job," SCPS argues, "it was easily decided" that her contract would not be renewed. (Doc. 21 at 13). Thus, the argument concludes, Saxon's termination was based on her employee status rather than her age.

But based on the evidence cited by SCPS in its motion, it is not clear that Wilson was under an obligation to eliminate either executive secretary position. SCPS points to deposition testimony from Wilson purportedly establishing this as fact; however, in the cited passage, rather than testifying that he had been ordered to eliminate one of the positions, he testified that he "recall[ed] that we were only going to have one executive secretary position for the following academic year." (Doc. 30 at 99). For her part, Saxon points to testimony from Wilson's

---

[2] In addition, Saxon argues that her position was not actually eliminated due to a reduction in force, so that the traditional test for establishing the fourth element of a *prima facie* case of discrimination – *i.e.*, replacement by a younger individual – would apply. (Doc. 38 at 10). Without deciding that question here, the Court notes that Wilson has testified that her job responsibilities were transferred to (and therefore, she was effectively "replaced" by) three younger employees. (Doc. 38 at 7-8, 10).

supervisor, Anna-Marie Cote, who testified that Wilson approached her with a recommendation that Saxon's contract not be renewed because other staff members could cover the work she was then doing and because she was an annual contract employee. (Doc. 34 at 16). Cote also testified that, when he recommended getting rid of Saxon, Wilson had not been ordered to eliminate one of the two executive secretary positions (or any other positions within his department). (Doc. 34 at 17).

The court finds that a genuine issue of material fact exists as to the basis for the decision to not renew Saxon's contract. This precludes a finding that the distinction between Saxon's employment status and Simpson's provides a legitimate, nondiscriminatory reason for the decision to get rid of Saxon. Accordingly, the motion will be denied.

**IV.    Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 21) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 12, 2017.

                                                    _____
                                                    GREGORY A. PRESNELL
                                                    UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party